COHEN, LEDER, MONTALBANO & CONNAUGHTON, LLC
669 River Drive, Suite 125
Elmwood Park, New Jersey 07407
(908) 298-8800
*Attorneys for Defendant ATU Local 880*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY – NEWARK VICINAGE

| | |
|---|---|
| SINOWA JOHNSON, | |
| Plaintiff, | Case No.: 1:25-cv-02528 |
| v. | **CERTIFICATION OF COUNSEL** |
| NJ TRANSIT BUS OPERATIONS, INC. d/b/a NJ TRANSIT and ATU LOCAL 880, | |
| Defendants. | |

I, PAUL A. MONTALBANO, being of full age, hereby certify as follows:

1. I am a member of the law firm of Cohen, Leder, Montalbano & Connaughton, LLC, serve as Counsel to Defendant Local 880, Amalgamated Transit Union.

2. Contemporaneously with the filing of this Certification, Local 880 has filed a Motion under R. 12(c) seeking to have Plaintiff's Complaint dismissed in its entirety for failure to have Federal Subject Matter Jurisdiction and dismissal for claim of Pendent Jurisdiction.

3. Defendant Local 880, in its supporting Brief, has made a citation to NJ Transit Bus Operations, Inc. v. Amalgamated Transit Local 820, an opinion of the Superior Court of New Jersey, Appellate Division, decided November 17, 2015, which is an unpublished decision but appears in Reporter's Service 2015 N.J. Super. Unpub. LEXIS 2361*, 2015 W.L. 7199412. A copy of the Appellate Division decision is attached to this Certification. Defendant Local 880 believes this unpublished opinion constitutes persuasive authority which may be of assistance to the Federal District Court.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing

statements made by me are willfully false, I am subject to punishment.

Dated: August 8, 2025

                                                                     Paul A. Montalbano

No *Shepard's* Signal™
As of: August 6, 2025 7:00 PM Z

# New Jersey Transit Bus Operations, Inc. v. Amalgamated Transit Union Local 820

Superior Court of New Jersey, Appellate Division

March 23, 2015, Argued; November 17, 2015, Decided

DOCKET NO. A-2579-13T1

**Reporter**
2015 N.J. Super. Unpub. LEXIS 2631 *; 2015 WL 7199412

NEW JERSEY TRANSIT BUS OPERATIONS, INC., Plaintiff-Respondent, v. AMALGAMATED TRANSIT UNION LOCAL 820, Defendant-Appellant, and AMALGAMATED TRANSIT UNION NEW JERSEY STATE COUNCIL, Defendant-Respondent.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY *RULE 1:36-3* FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-241-13.

## Core Terms

arbitration, negotiate, grievance, trial court, discipline, *exclusive jurisdiction*, disciplinary, footage, *unfair practice*, employee discipline, used to support, injunction, employees, enjoined, video

**Counsel:** Raymond G. Heineman argued the cause for appellant (Kroll Heineman Carton, LLC, attorneys; Mr. Heineman on the briefs).

Michael S. Rubin, Deputy Attorney General, argued the cause for respondent New Jersey Transit Bus Operations, Inc. (John J. Hoffman, Acting Attorney General, attorney; Andrea A. Silkowitz, Assistant Attorney General, and Mr. Rubin, on the brief).

Cohen, Leder, Montalbano & Connaughton, LLC, attorneys for respondent Amalgamated Transit Union New Jersey State Council (Paul A. Montalbano, on the brief).

**Judges:** Before Judges Simonelli, Guadagno and Leone. The opinion of the court was delivered by LEONE, J.A.D.

**Opinion by:** LEONE

## Opinion

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant Local 820 (Local) of the Amalgamated Transit Union (Union) filed a grievance against plaintiff New Jersey Transit Bus Operations, Inc. (NJTBO). Before the grievance was arbitrated, NJTBO filed a complaint for injunctive relief in the Chancery Division against the Local and against defendant Amalgamated Transit Union New Jersey State Council (State Council). NJTBO argued that the grievance raised a claim within [*2] the *exclusive*

Case 1:25-cv-02528-KMW-EAP   Document 24-2   Filed 08/08/25   Page 4 of 9 PageID: 132

Page 2 of 7

2015 N.J. Super. Unpub. LEXIS 2631, *2

*jurisdiction* of the Public Employment Relations Commission (*PERC*). The trial court agreed, enjoined the arbitration, and referred the matter to *PERC*. The Local appeals the order enjoining arbitration, claiming that the court erred in finding that the issue was not arbitrable and that *PERC* had *exclusive jurisdiction*. The State Council did not appeal, but its merits brief supports the Local's appeal. We affirm.

I.

The trial court largely adopted the allegations of the complaint, which were as follows. In 2007, NJTBO acquired a camera system (DriveCam) from DriveCam, Inc., and thereafter installed it in virtually all of its buses. DriveCam continuously records video of the road in front of the bus, and video and audio of the operator and passenger areas of the bus. If the bus exceeds a specific G-force threshold, for example by "stopping short," making a hard turn, or by impact, DriveCam preserves the ten seconds of footage both before and after that triggering event. The bus driver can also trigger DriveCam to preserve footage, for example, if a passenger is engaging in dangerous or unlawful conduct. The preserved footage is uploaded and sent daily to DriveCam, Inc., which [*3] summarizes the event and notifies NJTBO. NJTBO can access and save the preserved footage on DriveCam, Inc.'s website. NJTBO uses the preserved footage for addressing accidents and injuries, coaching bus drivers, and to support employee discipline if the footage shows an operator violated NJTBO's rules or standards, including those for the safe operation of buses.

In 2007, when NJTBO introduced DriveCam as a pilot program, a different local of the Union expressed concern that DriveCam evidence would be used for discipline. NJTBO's Director of Bus Safety informed that local and the State Council that NJTBO would use the footage if it could assist in investigating incidents or events involving NJTBO's employees. NJTBO added that if the footage was relevant to a disciplinary proceeding, a copy of the footage would be made available to the Union as part of that proceeding. After the expiration of a ninety-day grace/training period, NJTBO began using evidence acquired through DriveCam to support disciplinary proceedings.

In 2012, the Local, which represents employees at the Meadowlands Garage, filed a grievance challenging the use of DriveCam recordings for disciplinary purposes under the [*4] Collective Negotiations Agreement (CNA) between NJTBO and the Union.[1] According to NJTBO's grievance hearing officer, the Local argued that the DriveCam "cameras were illegally installed in the buses as no agreement was made to install them." NJTBO denied the grievance in July 2012.

In April 2013, the Local demanded arbitration. In November 2013, NJTBO filed a complaint in the Chancery Division seeking to enjoin arbitration. NJTBO's primary arguments were that the issue was not arbitrable, and that the Local was raising a claim that the employer failed to negotiate which fell within *PERC*'s *exclusive jurisdiction*. On November 5, 2013, Judge Thomas M. Moore issued an order to show cause, and the scheduled arbitration was postponed by consent in the interim.

At the December 17, 2013 return on the order to show cause, the Local confirmed that one of its contentions was that NJTBO did not negotiate the use of DriveCam evidence for discipline and that the Union had not agreed [*5] to such use. The Local also made clear that DriveCam evidence had not yet been used in a case involving employees belonging to the Local.

On December 17, in a twenty-one-page oral opinion, Judge Moore ruled in favor of NJTBO. Citing that the grievance did not involve a specific employee's disciplinary hearing, the trial court found that the Local was seeking "a global bar" against the use of DriveCam evidence to support discipline. The court found that the Local was complaining that NJTBO used DriveCam evidence for disciplinary purposes without having first negotiated with the

---

[1] There were three CNAs, one of which governed the terms and conditions of NJTBO's unionized hourly employees including bus drivers. The CNAs expired in 2010, but continued to be observed while new agreements were negotiated.

Case 1:25-cv-02528-KMW-EAP    Document 24-2    Filed 08/08/25    Page 5 of 9 PageID: 133

Page 3 of 7

2015 N.J. Super. Unpub. LEXIS 2631, *5

Union, and thus was alleging an *unfair practice*. Thus, the court concluded that **PERC** had *exclusive jurisdiction* under *N.J.S.A. 34:13A-5.4(c)*, and that the Local's grievance was not arbitrable.[2]

Based on those conclusions, the trial court issued [*6] a preliminary injunction on December 17. On January 2, 2014, after considering additional submissions from the Local, the court permanently enjoined the arbitration, as well as any future arbitration challenging NJTBO's use of DriveCam evidence to support discipline, except in "proper cause" challenges in individual disciplinary cases. The Local appeals the court's January 2, 2014 order.

II.

"Although decisions relating to injunctive relief are normally reviewed for abuse of discretion, our review is de novo where the disputed issue is a question of law." Stoney v. Maple Shade Twp., 426 N.J. Super. 297, 307 (App. Div. 2012) (citation omitted). "We exercise plenary review of the trial court's decision regarding the applicability and scope of an arbitration agreement." Jaworski v. Ernst & Young US LLP, 441 N.J. Super. 464, 472, 119 A.3d 939 (App. Div. 2015). Similarly, whether **PERC** "jurisdiction exists presents a purely legal issue, which we review de novo." See Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156, 57 A.3d 54 (App. Div. 2012) (citation omitted), certif. denied, 214 N.J. 175, 68 A.3d 890 (2013). Thus, we must hew to a de novo standard of review on those issues.

III.

The first issue is whether the parties to the CNAs agreed to arbitrate this dispute over whether DriveCam evidence can be used to support employee discipline. "The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." [*7] N.J.S.A. 2A:23B-6(b). "This preliminary question, commonly referred to as arbitrability, underscores the fundamental principle that a party must agree to submit to arbitration." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 187, 71 A.3d 849 (2013). "'[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Amalgamated Transit Union, Local 880 v. N.J. Transit Bus Operations, Inc. (Local 880), 200 N.J. 105, 115, 975 A.2d 403 (2009) (quoting Standard Motor Freight, Inc. v. Int'l Bhd. of Teamsters, 49 N.J. 83, 96, 228 A.2d 329 (1967)).

Our Supreme Court has "separated arbitrability matters into two categories: 'substantive' arbitrability and 'procedural' arbitrability. 'Substantive' arbitrability refers to 'whether the particular grievance is within the scope of the arbitration clause [in the CNA] specifying what the parties have agreed to arbitrate.'" Ibid. (quoting Standard Motor Freight, supra, 49 N.J. at 96-97).[3] "To determine a question about substantive arbitrability, a court need only decide 'whether the party seeking arbitration is making a claim which on its face is governed by the [CNA].'" Ibid. (quoting Standard Motor Freight, supra, 49 N.J. at 96).

Here, the CNA's arbitration provision states that if a dispute or grievance is not settled to the satisfaction of the parties, it can be referred [*8] to arbitration. However, the "[a]uthority of the arbitration board shall be limited to the determination of the dispute or grievance arising out of the interpretation, application or operation of the provisions of this agreement . . . . It shall not have any authority whatsoever to alter, amend or modify any of the provisions of this agreement."

"The language limiting the arbitrator's authority to the resolution of grievances arising out of the terms of the agreement and denying him the authority to add to, subtract from, or modify its terms is typical of a narrow, as distinguished from a broad, arbitration clause." Commc'ns Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of

---

[2] The trial court rejected NJTBO's alternative arguments. The court found that the Local had standing to seek arbitration under the CNAs, and that it was for **PERC** to decide whether the Local's *unfair practice* charge was untimely. Because we affirm on NJTBO's primary arguments, we need not address its alternative arguments, or the Local's rejoinder that NJTBO is estopped from asserting untimeliness.

[3] "'Procedural' arbitrability questions entail, on the other hand, 'whether procedural conditions to arbitration have been met.'" Id. at 116 (quoting Standard Motor Freight, supra, 49 N.J. at 97). Here, both parties agree the issue is substantive arbitrability.

Case 1:25-cv-02528-KMW-EAP    Document 24-2    Filed 08/08/25    Page 6 of 9 PageID: 134

Page 4 of 7

2015 N.J. Super. Unpub. LEXIS 2631, *8

Soc. Servs., 96 N.J. 442, 449, 476 A.2d 777 (1984). "Under such narrow arbitration clauses, disputes that do not involve rights traceable to the agreement are beyond the jurisdiction of the arbitrator and therefore are not properly arbitrable." Id. at 450; accord Port Auth. Police Sergeants Benevolent Ass'n of N.Y. & N.J., 340 N.J. Super. 453, 459, 774 A.2d 668 (App. Div. 2001).

Here, nothing on the face of the CNA governs whether DriveCam evidence may be used to support discipline. Indeed, the Local argues that "the collective bargaining agreement does not specifically provide for the use of cameras to assess discipline. Further, [NJTBO] has not reached an agreement with either the State Council or Local 820 concerning the use of Drive Cam videos in imposing [*9] discipline." The Local's argument validates the trial court's finding that the Local is claiming NJTBO failed to negotiate such use of DriveCam evidence.

The Local also argues that the use of DriveCam evidence to support discipline is contrary to the CNA's "Management Rights" provision, which states:

> The Management of the Company and the direction of the working forces, including the right to hire, suspend, discharge for proper cause, promote, demote, or transfer, and the right to determine the size of the working forces, are recognized to be in the Company, but each employee covered in this agreement shall have the right provided in this agreement for the adjustment of grievances.

The Local cites the requirement of "proper cause" for discharge. However, "proper cause" plainly refers to the adequacy of the reason for discharge.[4] It does not purport to dictate what type of evidence is admissible in a disciplinary hearing. Thus, the Local's claim that DriveCam evidence may not be used to support discipline is not "traceable to the agreement[,] [is] beyond the jurisdiction of the arbitrator and therefore [is] not properly arbitrable." Commc'ns Workers, supra, 96 N.J. at 450.

The State Council notes that under the Arbitration Act, N.J.S.A. 2A:23B-1 to -32, "[t]he authority conferred upon the arbitrator includes the power to . . . determine the admissibility, relevance, materiality, and weight of any evidence." N.J.S.A. 2A:23B-15(a). However, that procedural statute does not create a substantively arbitrable issue, but merely governs "the conduct of the arbitration process itself" when there is an arbitrable issue. See Fawzy v. Fawzy, 199 N.J. 456, 470, 973 A.2d 347 (2009).

The difference is illustrated by the nature of the Local's challenge to the use of DriveCam evidence. The Local is not challenging "the admissibility, relevance, materiality, [or] weight" of particular evidence in a particular employee's disciplinary proceeding. See N.J.S.A. 2A:23B-15(a); see, e.g., United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 39, 108 S. Ct. 364, 371, 98 L. Ed. 2d 286, 300 (1987). Rather, as the trial court found, the Local was seeking "a global bar" against any use in any disciplinary proceeding of DriveCam evidence, no matter [*11] how relevant, material, or weighty it might be, even if an arbitrator in an individual case would find it admissible.

Furthermore, the Local sought this global bar based on an alleged violation of the CNA, not based on evidentiary considerations. Indeed, the Local points to no evidentiary considerations that would bar use of such relevant video evidence, which is "generally admissible" under the New Jersey Rules of Evidence. State v. Wilson, 135 N.J. 4, 16-17, 637 A.2d 1237 (1994); see, e.g., State v. Reininger, 430 N.J. Super. 517, 526, 65 A.3d 865 & n.1 (App. Div.) (relying on admitted video from the police dashboard camera), certif. denied, 216 N.J. 367, 80 A.3d 748 (2013), cert. denied, __ U.S. __, 134 S. Ct. 1947, 188 L. Ed. 2d 962 (2014).

Because no provision of the CNA addresses what evidence, let alone DriveCam evidence, is admissible in support of discipline, the trial court correctly found that it was not an arbitrable issue under the CNA. The Local notes that there is "a presumption in favor of arbitration," and that "[d]oubts as to the scope of an arbitration clause shall be

---

[4] See, e.g., Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 277-80, 997 A.2d 185 (2010) (upholding an arbitrator's ruling that "just [*10] cause" requires that the rule violated "is reasonably related to the business of the employer," and "that the penalty fit the infraction"); see id. at 280-81 (citing United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 378 (3d Cir. 1995) (similarly addressing "proper cause")). The arbitrator may "fill in the gap and give meaning to the words 'just cause.'" Id. at 281. Here, however, what constitutes an adequate reason for discipline was not at issue.

Case 1:25-cv-02528-KMW-EAP    Document 24-2    Filed 08/08/25    Page 7 of 9 PageID: 135

Page 5 of 7

2015 N.J. Super. Unpub. LEXIS 2631, *10

resolved in favor of requiring arbitration." N.J.S.A. 34:13A-5.3. Moreover, "'[a]n agreement relating to arbitration should thus be read liberally to find arbitrability if reasonably possible.'" Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cantone Research, Inc., 427 N.J. Super. 45, 58, 47 A.3d 1 (App. Div.) (citation omitted), certif. denied, 212 N.J. 460, 56 A.3d 395 (2012). "Notwithstanding the foregoing well-established principles," however, "'a party cannot be required to submit to [*12] arbitration any dispute which he has not agreed so to submit.'" Ibid. (citation omitted). "The record here leaves us with no doubt" that whether DriveCam evidence can be used to support discipline "falls outside of the scope of the arbitration provision." See Northvale Bd. of Educ. v. Northvale Educ. Ass'n, 192 N.J. 501, 514 n.6, 933 A.2d 596 (2007). Accordingly, the trial court properly found that the issue was not arbitrable.

The Local complains that NJTBO did not assert during the grievance process that the grievance was not arbitrable. However, NJTBO did raise that objection once the Local sought arbitration. The Local concedes that "where a party resists an attempt to have a dispute arbitrated, it may go to the Superior Court for a ruling on the issue of its contractual obligation to arbitrate." Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 155, 393 A.2d 278 (1978); see State v. State Troopers Fraternal Ass'n, 134 N.J. 393, 399-400, 634 A.2d 478 (1993) (a party resisting arbitration may "seek a judicial determination of the arbitrability question" before going to PERC).

The determination whether a claim is arbitrable generally "is a function for the court, not the arbitrator[.]" Local 880, supra, 200 N.J. at 115. Nonetheless, the Local claims that the trial court went beyond the issue of arbitrability and ruled on the merits. To the contrary, the court did not pass on the merits of whether DriveCam could be used to support employee discipline, or whether [*13] NJTBO had an obligation to negotiate with the Union on that issue, leaving those questions for PERC.

IV.

The trial court also properly found that the Local was claiming that NJTBO failed to negotiate with the Union before using DriveCam evidence in support of employee discipline, and that such a claim falls within the exclusive jurisdiction of PERC. The New Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-1 to -43, lists "[u]nfair practices" by public employers and employee organizations in subsection(s) a. and b. of N.J.S.A. 34:13A-5.4. One unfair practice listed in subsection a. is that public employers are prohibited from "[r]efusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit[.]" N.J.S.A. 34:13A-5.4(a)(5). The Act provides that PERC "shall have exclusive power as hereinafter provided to prevent anyone from engaging in any unfair practice listed in subsections a. and b. above." N.J.S.A. 34:13A-5.4(c).

Thus, PERC has "exclusive jurisdiction over those unfair employer practices, such as a refusal to negotiate in good faith, which do not in fact involve an individual employee's civil service or other agency-protected rights." City of Hackensack v. Winner, 82 N.J. 1, 26, 410 A.2d 1146 (1980) (citing N.J.S.A. 34:13A-5.4(a)(5), (c)). "The Legislature obviously [*14] believed that the existence or occurrence of unlawful practices called for the expert handling of a specialized administrative agency such as PERC and that in these matters that agency's jurisdiction was indeed to be preferred even to that of the courts." Id. at 24; see Jefferson Twp. Bd. of Educ. v. Jefferson Twp. Educ. Ass'n, 188 N.J. Super. 411, 415, 457 A.2d 1172 (App. Div. 1982) (citing PERC's expertise as a reason why "PERC's exclusive power over unfair practice complaints precludes arbitration").

Accordingly, the trial court properly "referred to PERC for an appropriate action" the Local's allegation that NJTBO failed to negotiate with the Union concerning whether DriveCam evidence could be used in support of discipline. "Since the substance of the [Local's] complaint herein alleges conduct by [NJTBO] which arguably constituted an unfair practice under N.J.S.A. 34:13A-5.4(a)(5) and thus within the exclusive jurisdiction of PERC pursuant to N.J.S.A. 34:13A-5.4(c)," it was an appropriate course to have "the matter transferred to PERC for its initial adjudication." Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140 n.6, 393 A.2d 267 (1978) (citing Patrolmen's Benevolent Ass'n v. Montclair, 70 N.J. 130, 136, 358 A.2d 180 (1976)).

Also, the trial court found that the parties disputed the threshold issue of whether the subject matter of the grievance was within the scope of collective negotiations. As the Local acknowledges, "under N.J.S.A. 34:13A-5.4(d) PERC is the forum for the initial determination of whether a matter in [*15] dispute is within the scope of

Case 1:25-cv-02528-KMW-EAP   Document 24-2   Filed 08/08/25   Page 8 of 9 PageID: 136

Page 6 of 7

2015 N.J. Super. Unpub. LEXIS 2631, *15

collective negotiations. *PERC*'s jurisdiction in this area is primary." State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 83, 393 A.2d 233 (1978). We have encouraged trial courts to refer to *PERC* those matters over which *PERC* has primary jurisdiction. City of Newark v. Newark Council 21, 320 N.J. Super. 8, 17-18, 726 A.2d 942 (App. Div. 1999).

The Local claims that the trial court improperly circumvented and predetermined *PERC*'s jurisdiction. To the contrary, the court referred the issues to *PERC* for *PERC* to exercise its jurisdiction if it saw fit.

The referral left *PERC* able to consider "the negotiability and legal arbitrability of a matter sought to be submitted to binding arbitration pursuant to a collectively negotiated grievance procedure." N.J.A.C. 19:13-2.2(a)(4)(ii). "The scope of arbitrability is generally coextensive with the scope of negotiability." Old Bridge Bd. of Educ. v. Old Bridge Educ. Ass'n, 98 N.J. 523, 527, 489 A.2d 159 (1985); see generally In re NJ Transit Bus Operations, 125 N.J. 41, 592 A.2d 547 (1991) (discussing the scope of negotiability for NJ Transit cases).

The Local argues that *PERC* defers to arbitration in some instances. See State v. Council of N.J. State College Locals, 153 N.J. Super. 91, 92-93, 379 A.2d 63 (App. Div. 1977), certif. denied, 78 N.J. 326, 395 A.2d 194 (1978). However, "[t]he selection of procedures for the resolution of public sector labor disputes lies at the heart of *PERC*'s expertise." Newark Firemen's Mut. Benevolent Ass'n v. Newark, 90 N.J. 44, 55, 447 A.2d 130 (1982). By referring the matter to *PERC* "for an appropriate action on [the Local's] claim, if any," rather than guessing what *PERC* would do, the court properly left the selection of the appropriate procedure [*16] to *PERC*'s expertise.

The Local complains that NJTBO did not file a scope-of-negotiations petition with *PERC*. It is unclear why such a petition was necessary given the trial court's referral of the matter to *PERC*. Moreover, the Local was free to initiate in *PERC* an *unfair practice* charge or a scope-of-negotiation proceeding. N.J.A.C. 19:13-2.1; N.J.A.C. 19:14-1.1; see N.J.S.A. 34:13A-5.4(c), (d).[5]

V.

Thus, the trial court correctly found that the issue of the use of DriveCam evidence in support of employee discipline was not arbitrable, and that the Local's failure-to-negotiate claim alleged an *unfair practice* within *PERC*'s *exclusive jurisdiction*. Therefore, the court properly enjoined the Local's [*17] attempt to pursue the issue in arbitration.

The trial court found that NJTBO would suffer irreparable harm if forced to arbitration on a dispute not subject to arbitration; that it was well-settled that *PERC* has *exclusive jurisdiction* over the *unfair practice* of refusing to negotiate; that NJTBO had a reasonable probability of success on the jurisdictional issue; that the balance of hardships favored NJTBO; and that the public interest was best served by safeguarding the integrity of *PERC*'s jurisdiction over matters within its expertise. These findings satisfied the standard set forth in Crowe v. De Gioia, 90 N.J. 126, 447 A.2d 173 (1982). See Grabowsky v. Twp. of Montclair, 221 N.J. 536, 550, 115 A.3d 815 (2015); Garden State Equal. v. Dow, 216 N.J. 314, 320, 79 A.3d 1036 (2013).

The Local presents no additional argument that the trial court erred in applying *Crowe*, or in subsequently granting a permanent injunction. See Ridgefield Park, supra, 78 N.J. at 154 (noting that where "a particular dispute is not within the scope of collective negotiations, and thus not arbitrable," it is appropriate to "issue an injunction permanently restraining arbitration"). We find no abuse of discretion.

Affirmed.

---

[5] In fact, after the trial court's order, the Local filed a scope-of-negotiations petition with *PERC*. *PERC* assumed jurisdiction over the Local's scope-of-negotiation petition, did not defer to arbitration, and ruled that "[t]he subject of the [the Local's] grievance regarding [NJTBO's] use of DriveCam video/audio evidence is not mandatorily negotiable and not legally arbitrable." Amalgamated Transit Union, Local 820 v. N.J. Transit Bus Operations, Inc., P.E.R.C. No. 2015-53, 2015 NJ *PERC* LEXIS 26, at *2, 12, 22 (Feb. 26, 2015). The merits of *PERC*'s ruling are not before us in this appeal.

Case 1:25-cv-02528-KMW-EAP    Document 24-2    Filed 08/08/25    Page 9 of 9 PageID: 137

Page 7 of 7

2015 N.J. Super. Unpub. LEXIS 2631, *17

**End of Document**