| | |
|---|---|
| SINOWA JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>NJ TRANSIT BUS OPERATIONS INC. d/b/a/ NJ TRANSIT AND ATU LOCAL 880,<br><br>    Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>Hon. Karen M. Williams, U.S.D.J.<br>Hon. Elizabeth A. Pascal, U.S.M.J.<br><br>Civil Action No. 1:25-02528 (KMW/EAP)<br><br>Motion Date: October 6, 2025<br><br>         **(Electronically Filed)** |

**REPLY BRIEF IN SUPPORT OF NJ TRANSIT BUS OPERATIONS, INC.'S MOTION TO DISMISS THE COMPLAINT AND STAY THE PROCEEDINGS**

                              **CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**
                              50 Tice Boulevard, Suite 250
                              Woodcliff Lake, New Jersey 07677
                              (201) 474-7100
                              dsanchez@cmlawfirm.com
                              tanderson@cmlawfirm.com
                              Attorneys for Defendant,
                                   *NJ Transit Bus Operations Inc.*

Douglas V. Sanchez, Esq.
        Of Counsel

Travis M. Anderson, Esq.
        On the Brief

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

ARGUMENT ...................................................................................................................................1

    POINT I

        NJT IS A "POLITICAL SUBDIVISION" WITHIN THE MEANING OF THE NLRA AND LMRA AND THE GALETTE V. NEW JERSEY TRANSIT CORP., 145 S. CT. 2870 (2025) MATTER BEFORE THE SUPREME COURT HAS NO BEARING ON THIS CASE. .......................................................................................1

    POINT II

        PERC HAS EXCLUSIVE JURISDICTION OVER PLAINTIFF'S UNFAIR PRACTICE CLAIM AND COUNT TWO MUST BE DISMISSED. ........................................................................................................6

    POINT III

        THIS CASE MUST BE STAYED PENDING RESOLUTION OF NJT's MOTION TO DISMISS IN THIS MATTER. ...............................................8

CONCLUSION ...............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

Akishev v. Kapustin, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) ................................................. 11, 13

Brown v. Se. Pa. Transp. Auth., CIV.A. 85-2202, 1985 WL 2793, at *2–3 (E.D. Pa. Sept. 19, 1985) .................................................................................................................................. 7

Caratozzolo v. Gloucester Twp. Pub. Sch., 1:23-CV-03476-KMW-EAP, 2024 WL 1376050, at *1 (D.N.J. Apr. 1, 2024) ................................................................................................... 10

Clarity Sports Int'l LLC v. Redland Sports, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) ............. 11

Colt v. NJ Transit Corp., No. 72, 2024 WL 4874365, at *4 (N.Y. Nov. 25, 2024) ......................... 6

Cooper v. Se. PA Transp. Auth., 548 F.3d 296, 311 (3d Cir. 2008) ............................................... 7

Crilly v. Se. PA Transp. Auth., 529 F.2d 1355, 1358 (3d Cir. 1976) ............................................. 6

D'Arrigo v. New Jersey State Bd. of Mediation, 574 A.2d 44, 47 (N.J. 1990) ............................ 10

Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 578 (3d Cir. 2002) ........ 10

Farber v. City of Paterson, 440 F.3d 131 (3d Cir. 2006) ............................................................... 9

Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989) ........................ 5

Galette v. New Jersey Transit Corp., 145 S. Ct. 2870 (2025) ..................................................... 4, 5

Galette v. NJ Transit, No. 4 EAP 2024, 2024 WL 5457879 (Pa. Mar. 12, 2025) .......................... 6

Galloway Twp. Bd. of Educ. v. Galloway Twp. Ass'n of Educ. Secretaries, 393 A.2d 207, 210 (1978) ..................................................................................................................................... 10

Hackensack v. Winner, 82 N.J. 1, 43 (N.J. 1980) ......................................................................... 10

Int'l Ass'n of Firefighters, Local 1197 v. Twp. of Edison, 2:12-CV-00260 WJM, 2013 WL 396152, at *6 (D.N.J. Jan. 31, 2013) ..................................................................................... 10

Karns v. Shanahan, et al., 879 F.3d 504, 519 (3d Cir. 2018) .......................................................... 5

Local 54 Patrolman's Benevolent Association v. Fontoura, No. 06–6278, 2007 WL 4165158, at *4 (D.N.J. Nov.19, 2007) ....................................................................................................... 10

Mann v. Brenner, 375 F. App'x 232, 239 (3d Cir. 2010) .............................................................. 12

NLRB v. Nat. Gas Util. Dist., 402 U.S. 600, 604-05 (1970) ....................................................... 5, 6

Patrolmen's Benevolent Ass'n v. Montclair, 70 N.J. 130, 136 (1976) .......................................... 10

Perelman v. Perelman, CIV.A. 10-5622, 2011 WL 3330376, at *1 (E.D. Pa. Aug. 3, 2011) .................................................................................................................................. 11, 12

Pue v. New Jersey Transit Corp., 22-2616, 2023 WL 2930298, at *2 (3d Cir. Apr. 13, 2023) ........................................................................................................................................ 7, 12

Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140 n.6 (1978)................................................................................................................................ 10

Victor v. Huber, No. 3:12-CV-282, 2012 WL 2564841, at *2 (M.D. Pa. July 2, 2012) .............. 12

Weisman v. Mediq, Inc., No. CIV. A. 95-1831, 1995 WL 273678, at *2 (E.D. Pa. May 3, 1995) .................................................................................................................................... 11

**Statutes**

N.J.S.A. § 27:25-4.................................................................................................................... 7

N.J.S.A. § 34:13A–5.4(a)..................................................................................................... 9, 12

N.J.S.A. 34:13A–5.4(a)(4)......................................................................................................... 9

N.J.S.A. 34:13A–5.4(c).............................................................................................. 9, 10, 12

iii

**PRELIMINARY STATEMENT**

This office represents Defendant New Jersey Transit Corporation ("NJT") in the above-mentioned matter. Please accept this letter in lieu of a more formal reply to Plaintiff's Opposition to Defendant NJT's Motion to Dismiss and Motion to Stay.

In Plaintiff's opposition to NJT's motion to dismiss and motion to stay the proceedings, she argues three things: (1) whether NJT is an arm of the state is the issue of a "circuit split" before the U.S. Supreme Court in Galette v. New Jersey Transit Corp., 145 S. Ct. 2870 (2025), and therefore this Court cannot find that NJT is a "political subdivision" under the NLRA and LMRA; (2) the EERA does not preempt state law causes of action and, therefore, her unfair practice claims are properly before this Court; and (3) the motion to stay should not be granted because she would be unduly prejudiced.

For the reasons set forth below, Plaintiff's arguments are without merit and NJT's Motion to Dismiss and Motion to Stay the proceedings pending decision on the motions must be granted.

**LEGAL ARGUMENT**

**POINT I**

**NJT IS A "POLITICAL SUBDIVISION" WITHIN THE MEANING OF THE NLRA AND LMRA AND THE *GALETTE V. NEW JERSEY TRANSIT CORP.*, 145 S. CT. 2870 (2025) MATTER BEFORE THE SUPREME COURT HAS NO BEARING ON THIS CASE.**

Point One of Plaintiff's Opposition focuses on a non-issue in this matter. Plaintiff asserts that because Federal Circuit Courts differ on whether NJT is an arm of the state for interstate sovereign immunity purposes, NJT has not established it is a "political subdivision" within the meaning of the NLRA and LMRA (collectively the "Acts"). This assertion is incorrect because (1) this matter does not involve a question of whether NJT is an arm of the state for the purposes

1

of sovereign immunity, (2) whether NJT is an arm of the state for the purposes of sovereign immunity has no bearing on whether it is a "political subdivision", and (3) this Circuit previously found that NJT is a "political subdivision" within the meaning of the Acts.

As a preliminary matter, the Galette v. New Jersey Transit Corp., 145 S. Ct. 2870, (Mem)–2871 (2025), matter before the U.S. Supreme Court does not involve the claims at issue in this matter. The limited and specific issue before the Supreme Court in Gallette is "[w]hether the New Jersey Transit Corporation is an arm of the State of New Jersey for interstate sovereign immunity purposes." Id. (A true and correct copy of this memorandum opinion is attached to the Supplemental Certification of Travis M. Anderson, Esq., **Exhibit D**). Interstate sovereign immunity under the Eleventh Amendment however is not at issue before this Court. Rather, the defense raised in this case is that NJT is a "political subdivision" within the meaning of the NLRA and LMRA, which follows a separate test. For this reason alone, Plaintiff's argument fails.

Second, whether NJT is an arm of the state for interstate sovereign immunity purposes is not dispositive in this matter as it follows a separate test. For purposes of sovereign immunity, in determining whether the entity is an "arm of the state" this Circuit considers four factors set forth in Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989), which are: (1) whether the payment of a judgment would come from the state (State treasury factor); (2) what status the entity has under state law (State law factor); and (3) what degree of autonomy the entity has (Autonomy factor). See Karns v. Shanahan, et al., 879 F.3d 504, 519 (3d Cir. 2018) (applying the Fitchik factors and finding that NJT is an arm of the state of New Jersey for Eleventh Amendment Immunity).

On the other hand, the factors to determine whether the entity constitutes a "political subdivision" under the NLRA and LMRA are derived from NLRB v. Nat. Gas Util. Dist., 402 U.S.

2

600, 604-05 (1970), and consider whether the entity is: "'(1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'" Crilly v. Se. PA Transp. Auth., 529 F.2d 1355, 1358 (3d Cir. 1976) (quoting Nat. Gas Util. Dist., 402 U.S. at 604-05)). Critically, while the "State Factor" and "Autonomy Factor" have some overlap between the two tests, the Natural Gas test does not consider any monetary or "State Treasury" factor to determine whether an entity is a "political subdivision" making it a broader test than that for sovereign immunity.[1] An entity, therefore, can be a "political subdivision" within the meaning of the NLRA and LMRA and, at the same time, not be entitled to sovereign immunity.

The best example of the dichotomy between these two tests is illustrated through SEPTA, a similar transit authority based in Pennsylvania. In Crilly v. SEPTA, this Circuit found that SEPTA was a political subdivision within the meaning of the NLRA and LMRA. In its analysis, the Court found that (1) "SEPTA was created by an act of the state legislature as an 'agency and instrumentality' of the Commonwealth to 'exercise . . . public powers', including that of eminent domain[]" under the Metropolitan Transportation Authorities Act of 1963, 66 Pa. Stat. Ann. § 2001 et seq. (Supp. 1975), and (2) it was governed by a Board of Directors which was composed of "an ex officio member appointed by the Governor of Pennsylvania, two members from each of the five counties in its designated service area . . . and two members appointed by the Mayor of Philadelphia with the approval of the City Council." 529 F.2d at 1358. Based on these facts, the Court held that SEPTA fell squarely within the meaning of a "political subdivision" under the

---

[1] The difference between the decision in Colt v. NJ Transit Corp., No. 72, 2024 WL 4874365, at *4 (N.Y. Nov. 25, 2024), and Galette v. NJ Transit, No. 4 EAP 2024, 2024 WL 5457879 (Pa. Mar. 12, 2025), was the weight given to the treasury factor, which is not a factor in the Natural Gas test for the NLRA and LMRA. Compare Colt, 2024 WL 4874365, at *5-7 with Gallette, 2024 WL 5457879, at *8-9. This is further evidence that the "arm of the state" test overlaps with the National Gas test, but is separate and distinct.

LMRA and LMRA.  Id.; c.f. Brown v. Se. Pa. Transp. Auth., CIV.A. 85-2202, 1985 WL 2793, at *2-3 (E.D. Pa. Sept. 19, 1985) (refusing to overturn Crilly and holding that the court lacks subject matter jurisdiction over NLRA and LMRA claims against SEPTA).  To the contrary, in Cooper v. Se. PA Transp. Auth., 548 F.3d 296, 311 (3d Cir. 2008), this Circuit held that SEPTA is not entitled to sovereign immunity.  The Court reasoned that while all three of the Fitchik factors – State Treasury, State Law and Autonomy – are considered equally, the state treasury factor weighed against immunity.  See Id.

Considering that SEPTA – a similar transit agency to NJT – is a political subdivision but not entitled to sovereign immunity ultimately defeats Plaintiff's arguments that whether NJT is an "arm of the state" for interstate sovereign immunity purposes is a key distinction in this case.  Similar to SEPTA, NJT was "established in the Executive Branch of the State Government . . . [,] allocated within the Department of Transportation" and "an instrumentality of the State exercising public and essential governmental functions, and the exercise by the corporation of the powers conferred by this act shall be deemed and held to be an essential governmental function of the State."  N.J.S.A. § 27:25-4.  NJT likewise has the power of eminent domain under N.J.S.A. § 27:25-13.  NJT is also governed by a board composed of members including the Commissioner of Transportation, the State Treasurer, a member of the Executive Branch selected by the Governor, and additional public members appointed by the Governor.  Id. at § 27.25-4(b) to (f).  There is no question that NJT meets the definition of "political subdivision" under the NLRA and LMRA.

Lastly, this Circuit previously held – in a unpublished decision – that NJT is a political subdivision under the NLRA and LMRA.  As NJT set forth in its motion papers, the Court in Pue v. New Jersey Transit Corp., 22-2616, 2023 WL 2930298, at *2 (3d Cir. Apr. 13, 2023) upheld

4

Judge Freda L. Wolfson, U.S.D.J.'s decision that NJT is a political subdivision within the meaning of the LMRA.  See Def. NJT's Mot. Br., **Exhibit B**.  In so finding, the court stated:

> NJ Transit is "allocated within the Department of Transportation," and is "constituted as an instrumentality of the State exercising public and essential governmental functions."  N.J. Stat. Ann. § 27:25-4(a).  And it is governed by a board composed of members including the Commissioner of Transportation, the State Treasurer, a member of the Executive Branch selected by the Governor, and additional public members appointed by the Governor.  Id. § 27.25-4(b).  In both Crilly[, 529 F.2d at 1355] and Koval[ v. Wash. Cnty. Redevelopment Auth., 574 F.3d 238, 241 (3d Cir. 2009)], we held that the defendants constituted political subdivisions under similar circumstances.  See Crilly, 529 F.2d at 1358 (emphasizing that defendant SEPTA was created as an agency or instrumentality of the Commonwealth of Pennsylvania and was governed by a board composed of members appointed by the Governor, mayor of Philadelphia, and county commissioners); Koval, 574 F.3d at 243 (reasoning that defendant was established by statute as "a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof" (citation and internal quotation marks omitted)).  Thus, to the extent that Pue's pleadings can fairly be construed as raising claims under the LMRA and ERISA, we agree with the District Court's conclusion that it lacked subject-matter jurisdiction over these claims.
>
> [Pue, 2023 WL 2930298, at *2].

The court relied on the Crilly decision in determining that NJT was a "political subdivision" under the Natural Gas test.  The court's decision is persuasive authority and this Court should join the court in Pue in determining that NJT is a "political subdivision" under the Acts.

In sum, while NJT's status as an arm of the state for the purposes of sovereign immunity may support the argument that it is a "political subdivision," it is not a determining factor in the National Gas test.  Rather, NJT, like SEPTA, satisfies the Natural Gas test because it was established as an instrumentality of the State exercising public functions, including eminent domain authority, and is comprised of a board of directors that includes several government appointments.  Therefore, Plaintiff's argument that NJT is not a political subdivision is of no merit.

5

For all of these reasons, the Court lacks subject matter jurisdiction over the NLRA and LMRA claim in Count One because NJT is a "political subdivision" within the meaning of the Acts.

## POINT II

### PERC HAS EXCLUSIVE JURISDICTION OVER PLAINTIFF'S UNFAIR PRACTICE CLAIM AND COUNT TWO MUST BE DISMISSED.

In Plaintiff's Opposition Brief, she asserts that NJT "ignore[s] case law which provides that the existence of the NJ PERC does not inherently preempt state law claims" however that is not the issue in this case. Plaintiff provides no authority to dispute the reality that PERC has exclusive jurisdiction over all labor matters including the unfair practice claim in Count Two.

In Farber v. City of Paterson, 440 F.3d 131 (3d Cir. 2006), the Third Circuit affirmed a decision by the District Court that the plaintiff was permitted to bring a duty of fair representation claim ("DFR") against the union which was a claim *separate and apart from the EERA*.[2] Id. at 143. The decision in Farber, contrary to Plaintiff's bare and cursory assertions, does not stand for the proposition that PERC does not have exclusive jurisdiction over unfair practice claims under N.J.S.A. § 34:13A–5.4(a) or that this Court has jurisdiction over such claims. Plaintiff has set forth nothing in the opposition that contradicts NJT's argument that PERC has exclusive jurisdiction over the unfair labor practices claim and this claim must be dismissed from this case.

As NJT set forth in its motion brief, Plaintiff asserts an unfair practice claim against it alleging she was terminated because she exercised her right under the CBA to have a Union Representative present for a hearing. See Def.'s Mot. Br., Anderson Cert., Ex. A at ¶ 31. Considering the substance of Plaintiff's Complaint alleges conduct that constitutes an unfair labor

---

[2] A DFR claim cannot be brought against the employer as it is an action for fair representation against a union and, therefore, NJT takes no position on Plaintiff's argument that the Complaint should be read to include said claim or otherwise toll the statute of limitations on same.

6

practice under N.J.S.A. 34:13A–5.4(a)(3), it is "within the exclusive jurisdiction of PERC pursuant to N.J.S.A. 34:13A–5.4(c)," and the appropriate procedure is to have "the matter transferred to PERC for its initial adjudication." Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140 n.6 (1978) (citing Patrolmen's Benevolent Ass'n v. Montclair, 70 N.J. 130, 136 (1976)). The balance of caselaw in both state and federal courts support this assertion that unfair labor practices under the EERA are under the exclusive jurisdiction of PERC. See e.g., Hackensack v. Winner, 82 N.J. 1, 43 (N.J. 1980) ("The Legislature has accorded PERC 'exclusive power' to deal with unfair employer practices."); Galloway Twp. Bd. of Educ. v. Galloway Twp. Ass'n of Educ. Secretaries, 393 A.2d 207, 210 (1978) (same); Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 578 (3d Cir. 2002) ("Under N.J.S.A. § 34:13A-5.2, New Jersey's PERC has exclusive jurisdiction over all labor matters."); Caratozzolo v. Gloucester Twp. Pub. Sch., 1:23-CV-03476-KMW-EAP, 2024 WL 1376050, at *1 (D.N.J. Apr. 1, 2024) (citing D'Arrigo v. New Jersey State Bd. of Mediation, 574 A.2d 44, 47 (N.J. 1990), and N.J.S.A. § 34:13A–5.4(c)) (holding that an unfair practice charge under the EERA "may only be heard by [PERC]."); Int'l Ass'n of Firefighters, Local 1197 v. Twp. of Edison, 2:12-CV-00260 WJM, 2013 WL 396152, at *6 (D.N.J. Jan. 31, 2013) (finding that because PERC has exclusive jurisdiction over unfair labor practice claims under the EERA, the district court must abstain from exercising jurisdiction over pending unfair practice charges before PERC).

Based on the balance of caselaw on this subject, to find otherwise would usurp PERC's exclusive jurisdiction and impede on New Jersey's substantial interest in labor-management relations. See Local 54 Patrolman's Benevolent Association v. Fontoura, No. 06–6278, 2007 WL 4165158, at *4 (D.N.J. Nov.19, 2007) (recognizing the State's interest in using PERC to adjudicate labor disputes involving state law enforcement). For the reasons set forth above and in NJT's

7

motion brief, Count Two of Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction.

## POINT III

### THIS CASE MUST BE STAYED PENDING RESOLUTION OF NJT's MOTION TO DISMISS IN THIS MATTER.

In opposition to NJT's motion to stay, Plaintiff first argues that NJT failed to meet its burden because it failed to set forth any "serious legal or factual issues that would warrant dismissal" of the case and a stay would cause undue prejudice to her. See Pl.'s Opp. Br. at p. 7. Plaintiff's arguments are nothing more than conclusory statements and ignores NJT's arguments set forth in the motion brief.

When determining whether stay proceedings after a dispositive motion is filed – such as in this case – the Third Circuit considers the following factors:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.

Clarity Sports Int'l LLC v. Redland Sports, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) (citing Akishev v. Kapustin, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotation marks omitted). Plaintiff ignores the fact that all four factors actually weigh in favor.

The critical factor in a case where, as here, dispositive motions are filed is whether a stay would simplify or eliminate issues at trial, which Plaintiff simply argues in opposition that it would not, with nothing more. In evaluating this factor, the Court does not consider the substantive merits. See Perelman v. Perelman, CIV.A. 10-5622, 2011 WL 3330376, at *1 (E.D. Pa. Aug. 3, 2011) (quoting Weisman v. Mediq, Inc., No. CIV. A. 95-1831, 1995 WL 273678, at *2 (E.D. Pa.

8

May 3, 1995))  The Court is only required to examine whether the pending dispositive motion "does not appear to be without foundation." Victor v. Huber, No. 3:12-CV-282, 2012 WL 2564841, at *2 (M.D. Pa. July 2, 2012).  It also considers whether the motion will render discovery futile and potentially lead to the end of the case.  See Mann v. Brenner, 375 F. App'x 232, 239 (3d Cir. 2010); Perelman, 2011 WL 3330376 at *1.  Based on the arguments raised in the motion to dismiss this factor weighs heavily in favor of a stay because the motion to dismiss makes valid arguments based on statutory authority and case precedent, and, if granted, will lead to the end of this case.

      First, NJT is a "political subdivision" within the meaning of the NLRA and LMRA as set forth in detail above.  This Circuit also previously held, in an unpublished opinion, that NJT is a public entity and therefore not an "employer" as defined under the Acts.  See Pue v. New Jersey Transit Corp., 22-2616, 2023 WL 2930298, at *2 (3d Cir. Apr. 13, 2023) (holding that NJ Transit is exempt from the LMRA because it is a "political subdivision.").  Therefore, Plaintiff cannot assert claims under the NLRA or LMRA against NJT.  Second, this Court lacks subject matter jurisdiction over Plaintiff's unfair labor practices claims under the EERA in Count Two because the Public Employee Relations Commission ("PERC") has exclusive jurisdiction over these claims.  See N.J.S.A 34:13-5.4 (c); N.J.S.A. 34:13A-5.4(a)(1) and (3).  These arguments are supported in law through various case precedent and statutory authority.  Should NJT succeed on this argument this Court would lack subject matter jurisdiction to hear the case and eliminate any discovery in this forum.

      The remaining factors all weigh in favor of a stay and Plaintiff makes no effort in the opposition to set forth a compelling argument to the contrary.  Factor Four, the status of the case, favors a stay because this matter is in its infancy and only five months old, there is no scheduling order and there is no trial date.  Plaintiff has not demonstrated that a stay would cause any undue

9

prejudice under Factor One. Plaintiff argues that a stay pending resolution of the motions will delay the case and cause prejudice, however a "mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage." Akishev, 23 F. Supp. 3d at 447 (citation and quotation marks omitted). Plaintiff also has not demonstrated that she would face any hardship as a result of the stay as required under Factor Two. Again, according to the Complaint, Plaintiff's employment ended on May 1, 2024, and the grievance process ceased on October 8, 2024, and Plaintiff did not file suit until April 8, 2025. This does not indicate any urgency or hardship on the part of Plaintiff if a brief stay – at the early stages of litigation – was granted.

Lastly, the opposition brief also fails to delineate any actual tactical advantage to NJT because there are none. NJT filed the motion to dismiss to preserve its rights as a matter of law. To the contrary, to continue through discovery would severely prejudice NJT because it would be forced to continue through costly litigation and submit to jurisdiction where this Court has none. All of these factors, therefore, weigh in favor of a stay of discovery and NJT's motion must be granted.

## CONCLUSION

For all of these reasons set forth above and those addressed in NJT's Briefs in Support of its Motion to Dismiss the Complaint and Motion to Stay, this case should be stayed pending the decision on NJT's motion to dismiss and the Complaint dismissed with prejudice.

          Respectfully Submitted,

          **CRUSER, MITCHELL, NOVITZ,**
          **SANCHEZ, GASTON & ZIMET, LLP**

          /s/ *Travis M. Anderson*
          Travis M. Anderson, Esq.

Dated : September 29, 2025